IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-378

 Filed: 21 January 2020

Alamance County, No. 14 CVS 418

DEBBIE THOMPSON HAMPTON; as Executrix of the Estate of Delacy Beatrice
Thompson Miles, Deceased,

 v.

ANDREW TAYLOR HEARN, M.D., Defendant.

 Appeal by plaintiff from judgment entered 25 April 2018 by Judge A. Graham

Shirley, II in Alamance County Superior Court. Heard in the Court of Appeals 29

October 2019.

 Wake Forest University School of Law Appellate Clinic, by John J. Korzen, for
 plaintiff-appellant.

 Nelson Mullins Riley & Scarborough LLP, by G. Gray Wilson, Linda L. Helms,
 and Lorin J. Lapidus, for defendant-appellee.

 BERGER, Judge.

 Debbie Thompson Hampton (“Plaintiff), as Executrix of the Estate of Delacy

Beatrice Thompson Miles (“Ms. Miles”), appeals from a judgment entered after a jury

returned a verdict finding Dr. Andrew Taylor Hearn (“Dr. Hearn”) not liable for

negligence. Plaintiff contends the trial court erroneously instructed the jury on

intervening negligence and erroneously admitted expert witness testimony. We

disagree and find no error.
 HAMPTON V. HEARN

 Opinion of the Court

 Factual and Procedural Background

 On March 8, 2011, Ms. Miles was treated by Dr. Hearn at Alamance Regional

Medical Center for angioplasty and stent placement in her innominate vein related

to her dialysis treatments. Angioplasty is “the dilatation [sic] of a vessel.” The

innominate vein runs from the collarbone across the chest and then “enters the

superior vena cava, which is the main blood vessel entering the heart on the right

side.” Dr. Hearn inserted the stent to unblock the vein, which was likely blocked from

previous catheter placements in dialysis treatments.

 Dr. Hearn first performed the angioplasty, or “balloon” insertion, to expand the

vein. He then implanted a stent. The stent was about 60 millimeters, or about 2.5

inches, in length. The manufacturers put metallic markers on the ends of the stents

so its location can be easily identified radiologically. In Ms. Miles’ case, the stent was

to be placed at the junction of the left innominate vein and the superior vena cava.

 Three days later, on March 11, 2011, Ms. Miles needed a “permacath

placement” in her right internal jugular vein to establish new access for her ongoing

dialysis. In order to establish access, Dr. Gregory Schnier (“Dr. Schnier”), passed a

catheter from the right jugular vein through the superior vena cava to the right

atrium of the heart. No evidence tended to show Dr. Schnier knew or had been

informed that the stent Dr. Hearn placed on March 8 was obstructing the superior

vena cava.

 -2-
 HAMPTON V. HEARN

 Opinion of the Court

 During the procedure, Ms. Miles experienced ventricular tachycardia.

Providers at Alamance Regional Medical Center placed Ms. Miles on medication for

the arrhythmia, and discovered there was a “foreign body” in the right ventricle. Ms.

Miles was transferred to Duke Hospital on March 12, 2011, and the foreign stent was

removed on March 14, 2011. The Duke pathology report revealed that “a foreign

body” was found in the right ventricle. The foreign body was determined to be a 30

millimeter “self-expanding stent which had a fracture on one portion of it.” It was

part of the stent that Dr. Hearn had placed in Ms. Miles.

 Ms. Miles remained in the hospital from March 14, 2011 until March 23, 2011.

She returned to Duke from March 29 to April 3, 2011 due to bleeding from the dialysis

site. After her release from Duke Hospital, Ms. Miles entered a nursing home in

Georgia. Ms. Miles subsequently died from other causes.

 Plaintiff filed a complaint against Hearn Vascular Surgery, P.A.; Alamance

Regional Medical Center, Inc.; Dr. Hearn; and Dr. Schnier. Plaintiff alleged her

complaint was “an action for medical negligence resulting in severe and permanent

disabling injuries to [Ms. Miles] as a result of injuries sustained when a stent

improperly placed in [Ms. Miles’] vein for better dialysis access, was broken during a

subsequent procedure and went into [Ms. Miles’] heart causing severe, permanent

and disabling injuries.” At trial, before the opening statements, Plaintiff took a

 -3-
 HAMPTON V. HEARN

 Opinion of the Court

voluntary dismissal without prejudice against Dr. Schnier, leaving Dr. Hearn as the

sole defendant in the suit.

 During trial, Plaintiff’s expert witness regarding the standard of care, Dr.

Michael Dahn (“Dr. Dahn”), testified Defendant had placed the stent “too far into the

superior vena cava.” He acknowledged that it was acceptable medical practice for a

vascular stent to extend into the superior vena cava, but he testified that extending

“beyond one to two millimeters” is problematic. He further opined that Dr. Hearn’s

final positioning of the stent “set the stage for it . . . being sheared in half causing it

to migrate.” Dr. Dahn concluded that Dr. Hearn’s placement of the stent breached

the applicable standard of care. Dr. Dahn also testified that Dr. Schnier’s failure to

recognize the position of the stent when he performed his procedure breached the

standard of care.

 Two expert witnesses retained by Dr. Hearn, Dr. Steve Powell (“Dr. Powell”)

and Dr. Ray Workman (“Dr. Workman”), testified that Dr. Hearn had complied with

the standard of care when he performed the angioplasty and stent placement

procedures. Dr. Hearn also presented deposition testimony by Dr. Jack Dawson and

Dr. Michel Rinaldi (“Dr. Rinaldi”). Dr. Rinaldi was specifically retained to testify as

an expert witness on causation.

 During the charge conference, the trial court informed the parties of the

proposed jury instructions, which included Dr. Hearn’s requested instruction on

 -4-
 HAMPTON V. HEARN

 Opinion of the Court

intervening negligence. Plaintiff’s objection to the instruction on intervening

negligence was overruled. The intervening negligence instruction stated in pertinent

part:

 In this case, the defendant, Dr. Hearn, contends that, it
 [sic] he was negligent, which he denies, such negligence
 was not a proximate cause of the Plaintiff’s injury because
 it was insulated by the negligence of Dr. Gregory S[c]hnier.
 You will consider this matter only if you find that Dr.
 Hearn was negligent. If you do so find, Dr. Hearn’s
 negligence would be insulated and Dr. Hearn would not be
 liable to the Plaintiff, if the negligence of Dr. S[c]hnier, was
 such to have broken the causal connection or sequence
 between Dr. Hearn’s negligence and the Plaintiff’s injury;
 thereby excluding Dr. Hearn’s negligence as a proximate
 cause.

 After deliberation, the jury determined that Dr. Hearn was not negligent.

Plaintiff appeals, contending the trial court erred by instructing the jury on

intervening negligence, and that the jury likely would have reached a different result

but for the instruction. She further contends the trial court erred by allowing one of

Dr. Hearn’s expert witnesses on causation to opine on standard of care. We disagree

and find no error.

 Analysis

 I. Jury Instructions on Intervening Negligence

 Plaintiff first contends the trial court erred when it instructed the jury on

intervening negligence because that instruction was not supported by the evidence.

Plaintiff’s main argument asserts an instruction on intervening negligence should

 -5-
 HAMPTON V. HEARN

 Opinion of the Court

not have been given because no expert witness directly established the standard of

care Dr. Schnier owed; that he breached that standard of care; and that his breach of

the standard of care was the proximate cause of Ms. Miles’ injury. As a result, she

argues insufficient evidence that Dr. Schnier’s negligence insulated Dr. Hearn’s

negligence, thereby rendering an instruction on intervening negligence erroneous.

 We conclude direct expert testimony establishing those elements against Dr.

Schnier was not required for an instruction on intervening negligence to be given.

 When charging a jury in a civil case, the trial court
 has the duty to explain the law and apply it to the evidence
 on the substantial issues of the action. The trial court is
 permitted to instruct a jury on a claim or defense only if
 the evidence, when viewed in the light most favorable to
 the proponent, supports a reasonable inference of such
 claim or defense.

Estate of Hendrickson ex rel. Hendrickson v. Genesis Health Venture, Inc., 151 N.C.

App. 139, 151-52, 565 S.E.2d 254, 262 (2002) (citations and quotation marks omitted).

“This Court is required to consider and review jury instructions in their entirety.

Under the applicable standard of review, the appealing party must show not only that

error occurred in the jury instructions but also that such error was likely, in light of

the entire charge, to mislead the jury.” Id. at 150-51, 565 S.E.2d at 262 (citation

omitted).

 “A plaintiff asserting medical negligence must offer evidence that establishes

the following essential elements: (1) the applicable standard of care; (2) a breach of

such standard of care by the defendant; (3) the injuries suffered by the plaintiff were

 -6-
 HAMPTON V. HEARN

 Opinion of the Court

proximately caused by such breach; and (4) the damages resulting to the plaintiff.”

Hawkins v. Emergency Med. Physicians of Craven Cnty., PLLC, 240 N.C. App. 337,

341, 770 S.E.2d 159, 162 (2015) (internal citations and quotation marks omitted).

Proximate cause is defined as:

 a cause which in natural and continuous sequence,
 unbroken by any new and independent cause, produced the
 plaintiff’s injuries, and without which the injuries would
 not have occurred, and one from which a person of ordinary
 prudence could have reasonably foreseen that such a
 result, or consequences of a generally injurious nature, was
 probable under all the facts as they existed.

Id. at 341-42, 770 S.E.2d at 162-63 (citation and quotation marks omitted).

 Proximate cause is an inference of fact, to be drawn
 from other facts and circumstances. If the evidence be so
 slight as not reasonably to warrant the inference, the court
 will not leave the matter to the speculation of the jury.
 It is only when the facts are all admitted and only
 one inference may be drawn from them that the court will
 declare whether an act was the proximate cause of an
 injury or not. But that is rarely the case. Hence, “what is
 the proximate cause of an injury is ordinarily a question for
 the jury. . . . It is to be determined as a fact, in view of the
 circumstances of fact attending it.”

Conley v. Pearce-Young-Angel Co., 224 N.C. 211, 214, 29 S.E.2d 740, 742 (1944)

(citation omitted).

 Proximate cause is “an established element of negligence, the burden rests

upon a plaintiff to prove ‘by the greater weight of the evidence’ that a defendant’s

conduct was the proximate cause of the injuries alleged in an action for negligence.”

Clarke v. Mikhail, 243 N.C. App. 677, 686, 779 S.E.2d 150, 158 (2015) (citation

 -7-
 HAMPTON V. HEARN

 Opinion of the Court

omitted). “The doctrine of insulating negligence is an elaboration of a phase of

proximate cause.” Id. at 686, 779 S.E.2d at 158 (purgandum). “The burden of proof

does not shift to the defendant when an instruction on superseding negligence is

requested. Superseding or insulating negligence is an extension of a plaintiff’s

burden of proof on proximate cause.” Id. at 686, 779 S.E.2d at 158.

 Although “intervening negligence” is also referred to as “superseding or

insulating negligence” in our case law, Barber v. Constien, 130 N.C. App. 380, 383,

502 S.E.2d 912, 914 (1998), “negligence” in any of those three names originates from

“cause.” In Harton v. Tel. Co., 141 N.C. 455, 54 S.E. 299 (1906), our Supreme Court

explained the concept of intervening cause as follows:

 An efficient intervening cause is a new proximate cause
 which breaks the connection with the original cause and
 becomes itself solely responsible for the result in question.
 It must be an independent force, entirely superseding the
 original action and rendering its effect in the causation
 remote. It is immaterial how many new elements or forces
 have been introduced, if the original cause remains active,
 the liability for its result is not shifted. . . . If, however, the
 intervening responsible cause be of such a nature that it
 would be unreasonable to expect a prudent man to
 anticipate its happening, he will not be responsible for
 damage resulting solely from the intervention. The
 intervening cause may be culpable, intentional, or merely
 negligent.

141 N.C. at 462-63, 54 S.E. at 301-02 (citation omitted) (emphasis added); Balcum v.

Johnson, 177 N.C. 213, 216, 98 S.E. 532, 534 (1919) (noting that the new independent

cause “must be in itself negligent or at least culpable” (emphasis added)).

 -8-
 HAMPTON V. HEARN

 Opinion of the Court

 In order to warrant an instruction on intervening negligence, there needs to be

evidence tending to show an intervening cause, whether culpable, intentional, or

negligent, broke the connection of the original wrongdoer and that the original

wrongdoer had no reasonable ground to anticipate it.

 In a medical malpractice case, a prima facie evidentiary showing of the

standard of care, breach of the standard of care, proximate causation, and damages

is required. Clark v. Perry, 114 N.C. App. 297, 305, 442 S.E.2d 57, 61 (1994); Purvis

v. Moses H. Cone Mem’l Hosp. Serv. Corp., 175 N.C. App. 474, 477, 624 S.E.2d 380,

383 (2006); Hawkins, 240 N.C. App. at 341, 770 S.E.2d at 162. However, intervening

negligence is an extension of proximate cause. Plaintiff points to no case that states

a separate and heightened evidentiary showing is required regarding an alleged

insulating cause. Instead, our case law demonstrates that if the evidence at trial,

whether plaintiff’s own evidence or other evidence, reveals that a cause may have

been a sufficient intervening cause of the injuries alleged, an instruction on

intervening negligence is proper. As long as the intervening cause is “an independent

force, entirely superseding the original action and rendering its effect in the causation

remote,” an instruction may be warranted.

 In Clarke v. Mikhail, the plaintiff filed a wrongful death and medical

malpractice action against Dr. Mikhail, Ms. Hardin, and Coastal Carolina

Neuropsychiatric Center on behalf of Ms. Bohn. 243 N.C. App. at 678-79, 779 S.E.2d

 -9-
 HAMPTON V. HEARN

 Opinion of the Court

at 153. Ms. Bohn was first seen by Dr. Mikhail, who diagnosed her with paranoid

schizophrenia and generalized anxiety disorder. Id. at 679, 779 S.E.2d at 154. Ms.

Hardin, under Dr. Mikhail’s supervision was responsible for Ms. Bohn’s direct

treatment thereafter. Id. at 679, 779 S.E.2d at 154. In April 2010, Ms. Hardin

prescribed Lithium, a mood stabilizer for her depression and anxiety, to Ms. Bohn.

Id. at 680, 779 S.E.2d at 154. In a subsequent appointment, Ms. Hardin prescribed

Lamictal, which had a warning stating the drug carries the risk of a severe rash, to

Ms. Bohn. Id. at 680-81, 779 S.E.2d at 154-55. Ms. Bohn continued to see Ms. Hardin

until June 2010. Id. at 681, 779 S.E.2d at 155.

 In June 2010, Ms. Bohn went to Onslow Urgent Care with a sore throat, yeast

infection, blisters on her lips, and a rash. Id. at 681, 779 S.E.2d at 155. Onslow

Urgent Care did not advise Ms. Bohn to stop taking Lamictal and diagnosed her with

herpes simplex 2, bacterial conjunctivitis, leukoplakia of her oral mucous membrane,

yeast infection, and canker sores. Id. at 682, 779 S.E.2d at 155. Two days later, she

was transported to the hospital from her home and treated for the rash she had

developed. Id. at 682, 779 S.E.2d at 155. Ms. Bohn eventually passed away two

months later of ventilator-acquired pneumonia. Id. at 682, 779 S.E.2d at 156.

 In her complaint, the plaintiff “alleged Ms. Hardin was negligent in prescribing

and dosing a drug, Lamictal, to treat [Ms. Bohn’s] severe mental illness.” Id. at 679,

779 S.E.2d at 153. At trial, defendants presented two experts whom both “opined

 - 10 -
 HAMPTON V. HEARN

 Opinion of the Court

Lamictal was an appropriate medication for Ms. Bohn’s condition.” Id. at 683, 779

S.E.2d at 156. The defendants also presented two causation experts who testified

that “in their expert opinion, if Ms. Bohn had been properly diagnosed on the date

she sought care at Onslow Urgent Care and had discontinued the Lamictal, more

likely than not the rash would have resolved and she would have survived.” Id. at

683, 779 S.E.2d at 156. The trial court instructed the jury on intervening negligence

and stated it should consider Onslow Urgent Care’s negligence as superseding and

intervening. Id. at 685, 779 S.E.2d at 157-58. The jury returned a verdict in favor of

the defendants. Id. at 685, 779 S.E.2d at 157-58.

 On appeal, the plaintiff argued, among other things, the trial court erred by

“submitting the issue of superseding and intervening negligence to the jury” and

“submitting a jury instruction on superseding and intervening negligence, which was

unsupported by the evidence and misstated the law.” Id. at 684, 779 S.E.2d at 157.

This Court, concluded:

 The trial court’s instruction to the jury did not
 require Plaintiff to disprove superseding or intervening
 negligence by Onslow Urgent Care. The trial court’s jury
 instruction properly informed the jury of the following: (1)
 Plaintiff carries the burden “to prove by the greater weight
 of the evidence” that Defendants’ negligence was a
 proximate cause of Ms. Bohn’s injury and death; (2)
 Defendants did not carry the burden of proving their
 negligence, if any, was insulated by Onslow Urgent Care’s
 negligence; and, (3) the issue of superseding negligence was
 to be addressed only if the jury first found Defendants were
 negligent in the course of Ms. Bohn’s medical treatment.

 - 11 -
 HAMPTON V. HEARN

 Opinion of the Court

Id. at 687, 779 S.E.2d at 159.

 This Court did not state an expert witness was required to establish a separate

and heightened evidentiary showing of Onslow Urgent Care’s standard of care, that

it had breached its standard of care, or that its breach was the proximate cause of

Ms. Bohn’s injuries. The trial court relied on the evidence presented at trial in

determining whether an instruction on intervening negligence was proper. Based on

the evidence, this Court determined that the defendants’ conduct and Onslow Urgent

Care’s conduct could be the proximate causes of Ms. Bohn’s injuries. This Court

emphasized: “The burden of proof remained with Plaintiff to prove Defendants’

negligence, if any, was a proximate cause of Ms. Bohn’s injury and death. The trial

court’s jury instruction did not improperly shift the burden of proof or misstate the

law.” Id. at 688, 779 S.E.2d at 159.

 Thus, it follows to reason that, even if a third-party is not a party at trial, an

instruction on intervening negligence may be given if the evidence at trial shows that

the third-party’s conduct was a sufficient “intervening cause.” Id. at 688, 779 S.E.2d

at 159; see Barber, 130 N.C. App. at 382, 502 S.E.2d at 914. Therefore, Plaintiff’s

contention that an expert witness was required to first establish Dr. Schnier’s

standard of care and whether he breached that standard of care in order to warrant

an instruction on intervening negligence is without merit.

 - 12 -
 HAMPTON V. HEARN

 Opinion of the Court

 Our task on appeal is to determine whether sufficient evidence was presented

for the jury to decide whether any negligence on Dr. Hearn’s part was insulated by a

superseding cause.

 The test by which the negligent conduct of one is to be
 insulated as a matter of law by the independent negligent
 act of another, is reasonable unforeseeability on the part of
 the original actor of the subsequent intervening act and
 resultant injury. Put another way, in order for the conduct
 of the intervening agent to break the sequence of events
 and stay the operative force of the negligence of the original
 wrongdoer, the intervening conduct must be of such nature
 and kind that the original wrongdoer had no reasonable
 ground to anticipate it.

Adams v. Mills, 312 N.C. 181, 194, 322 S.E.2d 164, 173 (1984) (citation omitted).

However,

 the law of proximate cause does not always support the
 generalization that the misconduct of others is unforeseeable.
 The intervention of wrongful conduct of others may be the
 very risk that defendant’s conduct creates. In the absence of
 anything which should alert him to the danger, the law does
 not require a defendant to anticipate specific acts of
 negligence of another.

Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 234, 311 S.E.2d 559, 565

(1984) (citation omitted).

 “[R]easonable unforseeability is the critical test for determining when

intervening negligence relieves the original tortfeaser of liability.” Barber, 130 N.C.

App. at 385, 502 S.E.2d at 916 (awarding new trial after first determining the trial

court’s instruction on intervening negligence was supported by the evidence but

 - 13 -
 HAMPTON V. HEARN

 Opinion of the Court

erroneously failed to reference foreseeability); see Pope ex rel. Pope v. Cumberland

Cnty. Hosp. Sys., Inc., 171 N.C. App. 748, 752, 615 S.E.2d 715, 718 (2005) (reversing

entry of directed verdict for the medical negligence claims relating to the defendant

hospital’s labor and delivery nurses because the plaintiff’s evidence, that the

intervening cause alleged by the defendants was foreseeable in causing the decedent’s

injuries, was “sufficient to create an inference of causation for the jury”).

 Here, sufficient evidence demonstrates that Dr. Hearn could not anticipate Dr.

Schnier’s subsequent conduct. Two of Dr. Hearn’s witnesses were tendered as experts

in vascular surgery, and both testified that Dr. Hearn complied with the statutory

standard of care. Both expert witnesses opined that the fracture of the stent was

unforeseeable. Dr. Powell testified that it was “totally not foreseeable in any way”

that the stent placed by Dr. Hearn would be fractured during a subsequent procedure

performed by Dr. Schnier. Dr. Workman testified that after Dr. Hearn performed his

surgery it was not reasonably foreseeable that a stent fracture would occur during

the subsequent procedure performed by Dr. Schnier.

 While Dr. Dahn testified that Dr. Hearn could anticipate subsequent

procedures being needed or performed on a patient like Ms. Miles, who was receiving

dialysis treatment, it was not foreseeable that the stent Dr. Hearn placed would be

fractured. Dr. Dahn testified it was permissible for the stent to extend one or two

millimeters into the superior vena cava. After being asked the significance of the

 - 14 -
 HAMPTON V. HEARN

 Opinion of the Court

stent extending beyond one to two millimeters, he replied, “I think it’s problematic.

The likelihood that it’ll result in a major problem is low, but, I think it’s [a]

problematic situation because now it sets the patient up for subsequent complication

with the passage of any other device.”

 Although Dr. Dahn testified that Dr. Hearn’s “final positioning of the stent set

the stage for it’s being sheared in half causing it to migrate,” this statement merely

opines the stent created a risk for some subsequent injury. It is not a concession Ms.

Miles’ injury could not have been the result of some insulating cause.

 Moreover, on re-cross, Dr. Dahn affirmed his pre-trial deposition testimony

that Dr. Schnier breached the standard of care by failing to recognize the position of

the stent during his procedure. Dr. Dahn also opined that “the likelihood of having a

sheared off stent is low, but, still significant.” Dr. Dahn further testified that had Dr.

Schnier performed his procedure properly, “the likelihood of having a sheared off

stent is low.”

 Dr. Hearn’s expert witnesses and Plaintiff’s own expert witness provided

sufficient testimony demonstrating that Dr. Schnier’s intervening conduct was of

such nature that Dr. Hearn “had no reasonable ground to anticipate it.” Adams, 312

N.C. at 194, 322 S.E.2d at 173. Moreover, viewing the evidence in the light most

favorable to Plaintiff, “[t]he well-settled rule in this jurisdiction is that except in cases

so clear that there can be no two opinions among men of fair minds, the question

 - 15 -
 HAMPTON V. HEARN

 Opinion of the Court

should be left for the jury to determine whether the intervening act and the resultant

injury were such that the author of the original wrong could reasonably have expected

them to occur as a result of his own negligent act.” Hairston, 310 N.C. at 238, 311

S.E.2d at 567; Floyd v. McGill, 156 N.C. App. 29, 41, 575 S.E.2d 789, 797 (2003) (“The

trial court properly permitted the jury to draw inferences from these facts and decide

the issue of proximate cause. Since more than one inference could be drawn from the

evidence, submission of the issue to the jury was appropriate.”). Because two theories

of proximate cause were presented at trial, the trial court did not err in instructing

the jury to determine whether Dr. Schnier’s intervening conduct insulated Dr.

Hearn’s alleged original negligence.

 Plaintiff also contends she was prejudiced by the trial court’s instruction on

intervening negligence. Plaintiff specifically argues the trial court’s “heavy emphasis

on intervening negligence in its instructions” likely influenced the jury’s decision in

finding Dr. Hearn not negligent. We disagree.

 The use of the North Carolina Pattern Jury Instruction is “the preferred

method of jury instruction” unless a pattern instruction misstates the law. Barber,

130 N.C. App. at 385, 502 S.E.2d at 915 (citation and quotation marks omitted). In

the present case, the trial court utilized N.C.P.J.I. 102.65, insulating/intervening

negligence, and did not alter it substantively when it instructed the jury. “It cannot

be said that it was error for the judge to state the law correctly to the jury . . . .”

 - 16 -
 HAMPTON V. HEARN

 Opinion of the Court

Boykin v. Kim, 174 N.C. App. 278, 286, 620 S.E.2d 707, 713 (2005). Accordingly,

Plaintiff’s argument regarding prejudice is overruled.

 II. Evidentiary Rulings

 Plaintiff also argues the trial court erred when it allowed Dr. Hearn’s expert

witness on causation of permanent injury to opine on the applicable standard of care.

Plaintiff specifically contends Dr. Rinaldi’s testimony about placement of the stent

was not admissible as a matter of law and, even if it were, the trial court’s admission

of his testimony was prejudicial. We disagree.

 In reviewing evidentiary rulings by the trial court, “we defer to the trial court

and will reverse only if the record shows a clear abuse of discretion.” Gray v. Allen,

197 N.C. App. 349, 352, 677 S.E.2d 862, 865 (2009). “A court has abused its discretion

where its ruling is manifestly unsupported by reason or is so arbitrary that it could

not have been the result of a reasoned decision.” Id. at 353, 677 S.E.2d at 865

(internal citation and quotation marks omitted). “[A]dmission of incompetent

evidence, even though it is not withdrawn, is no ground for a new trial unless

prejudice is shown.” Smith v. Perdue, 258 N.C. 686, 690, 129 S.E.2d 293, 297 (1963).

 Here, a videotape of Dr. Rinaldi’s deposition was played at trial. Plaintiff

contends the following colloquy between defense counsel and Dr. Rinaldi “was

inadmissible because it clearly went to the standard of care issues of whether [Dr.

 - 17 -
 HAMPTON V. HEARN

 Opinion of the Court

Hearn] improperly placed the stent, an issue on which Dr. Rinaldi was not

designated”:

 Q. And where was the stent placed in this case as you
 understand it from your review of the medical records?

 A. Yes. It was extending from the innominate vein or
 brachiocephalic vein into the superior vena cava.

 Q. Okay. And is there anything unusual about the
 placement of that stent in that location?

 A. I don’t think so. That is done frequently. And, in fact,
 stents can be placed in the superior vena cava when people
 have narrowings [sic] in the superior vena cava. I’ve
 personally done it myself, and it is a normal procedure.

 Plaintiff’s main contention is that the jury likely attached great significance to

Dr. Rinaldi’s testimony because the position of Dr. Hearn’s placement of the stent

was the crux of the issue at trial. However, providing a limiting instruction to the

jury following the admittance of erroneous testimony may cure an alleged error in

the admittance of such testimony. See Chamberlain v. Thames, 131 N.C. App. 705,

711, 509 S.E.2d 443, 447 (1998). “A jury is presumed to follow the court’s

instructions.” Nunn v. Allen, 154 N.C. App. 523, 541, 574 S.E.2d 35, 46 (2002).

 The trial court provided the following limiting instruction prior to playing the

remainder of Dr. Rinaldi’s testimony on the videotape:

 All right, members of the jury, before we go on, I want to
 instruct you and remind you that this witness is not
 offering any opinion as to whether Dr. Hearn’s conduct
 adhered to or failed to adhere to the standard of care and
 you are not to consider his testimony for that purpose.

 - 18 -
 HAMPTON V. HEARN

 Opinion of the Court

 Any purported error in the admission of Dr. Rinaldi’s testimony on standard of

care did not prejudice Plaintiff because it was cured by the trial court’s limiting

instruction. Plaintiff has failed to show the trial court abused its discretion.

 Conclusion

 The trial court did not err in instructing the jury on intervening negligence.

Plaintiff was not prejudiced by the admittance of Dr. Hearn’s expert witness

testimony.

 NO ERROR.

 Judges TYSON and INMAN concur.

 - 19 -